In the Matter of the CITY OF NEW YORK, Appellant, Relative to Acquiring Title to a Public Place Bounded by Duane Street and Other Streets in the Borough of Manhattan. JACOB GINSBERG, Respondent.

First Department, March 11, 1971.

*Milton H. Harris* of counsel (*Stanley Buchsbaum* with him on the brief; *J. Lee Rankin, Corporation Counsel*), for appellant.

*Bernard L. Bermant* of counsel (*Carl J. Moskowitz* with him on the brief; *Skinner & Bermant, Leddy & Raber,* attorneys), for respondent.

McNALLY, J. After three trials and two prior appeals to this court (24 A D 2d 243 and 31 A D 2d 530) and one appeal to the Court of Appeals (26 N Y 2d 841), the city appeals from the final decree entered December 3, 1969 insofar as it makes a land award of $355,000 for Damage Parcel 9 taken by the city on July 31, 1962. The claimant's appeal to the Court of Appeals was pursuant to CPLR 5601 (subd. [d]) from the instant final decree for the purpose of bringing up for review this court's original intermediate order of reversal (24 A D 2d 243.)

and was dismissed on the grounds that the claimant was not an aggrieved party since the $355,000 award after the third trial was equal to the amount sought and obtained on the first trial.

We conclude the present valuation is justified by the proof and well within the range of the probative evidence in the record, and, accordingly, we affirm.

In 24 A D 2d 243, we held improper the determination of the value of the property used as a parking lot and gas station at the time of vesting on July 31, 1962, on the basis of a long-term lease dated September 1, 1961 under which the lessee agreed to erect a garage at a rental of $15,000 for the first year and $25,000 thereafter. When the said lease was made, the premises were subject to a prior lease running until 1970. Claimant had entered into an agreement with the prior lessee for surrender of the lease upon payment of $27,000. The right to surrender expired December 1, 1961, prior to the taking, and was never exercised. Thus, when Damage Parcel 9 was condemned, the prior lease was still in existence. Although plans for a garage under the September 1961 lease were filed on or about November 8, 1961, the proposed lessee discovered on November 11, 1961 that the premises were to be condemned and thereafter demanded and obtained the return of the first year's rent and moneys held in escrow as security, thus the September 1961 lease terminated prior to the taking. The award was based on the existence of the September 1961 lease ignoring the fact that the premises were then utilized for a parking lot and gasoline station. The city was thereby required to respond to an award grounded on the capitalization of income from a nonexistent lease. Moreover, the award compensated claimant for an expense never incurred, the $27,000 to be paid for surrender of the 1961 lease.

On the second trial the award was $285,000 (31 A D 2d 530) and was reversed by this court on the ground that the valuation based on comparable property was not supported by the record.

On the third trial the court found comparable the sale price of a parcel at Cliff and Fulton Streets improved with a 10-level parking garage, reflecting a land value of $39.05 per square foot, that the claimant's land was more valuable to the extent of 35%, thereby establishing a valuation of $52.55 per square foot, or $355,000 for the entire parcel. Since said valuation is not based on the capitalization of the projected income under the September 1961 lease, no deduction need be made for its termination.

The city advanced a valuation based on land assembly for an office building site and developed a unit which was claimed to be reasonably related to the value of nearby land. On the third trial, the learned court adopted the claimant's theory and valued the land at $52.55 a square foot overall which unit was derived from the sale of the parking garage site at Fulton and Cliff Streets. In so doing, the trial court held and the record substantiates the holding that on the date of the vesting of title the vacant land with additional frontage on Cardinal Hayes Place contained 6,755 square feet. The property at Fulton and Cliff Streets is south of the Brooklyn Bridge, not within the Civic Center, while Damage Parcel 9 is located within the perimeter of the Civic Center which makes for an infinitely better location. On the date of vesting of title it was operated under lease as a parking lot and gas station. This use constituted a nonconforming use, thus the proposed construction of an automatic garage was permissible. Based on the testimony before the court on the retrial and the earlier records, the court found the comparable site, to wit, the Cliff Street garage sale site, was less valuable than Damage Parcel 9 and in fact Damage Parcel 9 was 35% more valuable. The trial court further found that the only credible evidence in the record was the testimony of the claimant's real estate expert.

A trial court is required to value the property on the evidence submitted. It is bound to make its award within the range of the probative evidence in the record. Its findings may not be arbitrarily determined. (*Matter of City of New York [A. & W. Realty Corp.*], 1 N Y 2d 428, 433.) We hold the trial court was fully justified in its adoption of the claimant's adjustment of the Cliff Street sale. In absence of other evidence no other legal conclusion could have been reached. (*A. & W. Realty Corp., supra.*) The authorities support this view.

In *Godfried* v. *State of New York* (18 N Y 2d 896, affg. 22 A D 2d 973) the Court of Appeals affirmed a modification of an award based on the use by the Appellate Division of the only sale in the record of comparable size and availability — a shopping center site — even though the sale was of land in the City of Kingston and the condemned land was located one-half mile west of the outer limits of the city, the court holding there was no valid reason for disturbing the trial court's determination.

In *Brocka* v. *State of New York* (31 A D 2d 852) the main comparable relied on by claimant's expert was located 55 miles away inside a village, had been sold 10 years earlier, and other

than being a gasoline service station differed in size of buildings, frontage, depth and terrain. The Appellate Division held the trial court was justified in making an attempt to evaluate the property and could accept as the basis for such evaluation the earlier sale with a proper adjustment for differences from the property under consideration.

We disagree with the statement of our dissenting brother that " this case points up the ineptitude of the present judicial system ". The fact is the case points up the efficiency of our judicial process. In 24 A D 2d 243 and 31 A D 2d 530 (*supra*), we set forth the defects in the records then before us and ordered new trials for the reasons hereinbefore stated all in keeping with the purpose to enable the parties to establish a proper basis for compensation. A person whose property is condemned is entitled to the protection of our court system, both at trial and appellate levels. It should be borne in mind that the condemnee is an involuntary litigant not here through some act, omission or transaction of his own.

Despite the requirement that the award be within the range of the probative evidence in the record, the dissent advances a basis for compensation unsupported by the record and not suggested or relied on by either party. In the determination of fair compensation each party is entitled to advance his basis for valuation. Since it is the condemnor who assumes to take the property of the condemnee, without his consent, the condemnor is required to justly compensate the condemnee. If, for reasons not a matter of record, the condemnor elects to rely on an untenable basis of valuation, the court is required to adjudicate the value on the basis of the probative evidence.

We conclude the present valuation is justified and well within the range of the probative evidence in the record. (*Matter of City of New York* [*A. & W. Realty Corp.*], *supra*; *Brocka* v. *State of New York, supra*; *Godfried* v. *State of New York, supra*.)

Findings of a trial court are generally to be given the same effect as jury verdicts. (5A C. J. S., Appeal and Error, § 1656 [1].) After three trials, absent compelling circumstances, which we do not find, the determination of factual issues should be accorded finality. (*Bianchi* v. *Klein,* 229 App. Div. 758, affd. 255 N. Y. 538; *Lyman* v. *Village of Potsdam,* 204 App. Div. 528; *Gutman* v. *Weisbarth,* 194 App. Div. 351; *Grossman* v. *Boisseau,* 104 N. Y. S. 2d 858, affd. 279 App. Div. 1051; 5A C. J. S., Appeal and Error, § 1654.)

The judgment should be affirmed, without costs or disbursements.

STEUER, J. (dissenting). This claim in condemnation has been tried three times and it is, unfortunately, necessary for an understanding of the determination to review the prior history. The property, labeled Damage Parcel No. 9, is located on Park Row between Duane and Pearl Streets and, at the time of taking, was being used as a parking lot. At the first trial the value of the parcel was found to be $355,000. This figure was arrived at on proof of the following facts. Prior to the taking the owner had entered into a net lease with one Hallock by the terms of which Hallock agreed on an annual rental of $25,000. Hallock was to erect on the premises a 10-level "Minit-Park" garage. Plaintiff's expert capitalized the rental at 7% and rounded off the result to reach $355,000. This court reversed (24 A D 2d 243, *sub nom. Matter of City of New York* [*Friedman*]) upon the ground that the basis used was too speculative, enumerating several factors such as that the proposed lease did not obligate the lessee to build a garage, that the option to vacate the existing tenancy had never been exercised, and the like. A second trial resulted in an award of $285,000. This figure was arrived at by comparing the sale of a garage at Cliff and Fulton Streets and adding approximately $6.50 a square foot to the sale price of that property. This court again reversed (31 A D 2d 530) on the grounds that using a single sale was not a reliable standard, that the properties were concededly not comparable, and that the contention that the Cliff-Fulton garage proved unprofitable should have been considered as bearing on comparability.

On the third trial, now under review, the award was again $355,000. The objections of the prior trials were on the surface overcome by the simplest means. The square foot area of the parcel was divided into the preconceived figure of $355,000. The same was done for the Fulton Street sale. The result shows a difference of 35%. It was then testified that the instant property was worth 35% more, and the circle was complete. This childish attempt at reconciliation of values is completely belied by the record. Reliance on a single sale is just as tenuous as it was on the prior trial and just as open to criticism. An argument might be made that when there is only one sale that sale supplies the only standard. However, before a sale — whether it be the only one advanced or one of many — can be used, the property must be comparable. Here the record shows that the Fulton Street property was not comparable. The

claimant's expert when asked about it on cross-examination on the second trial, scornfully replied, "You might just as well ask me about a garage up in Albany." If that were not enough, the differential employed, 35%, shows that there is no true relationship between the respective properties. Without the comparative sale approach, there is absolutely nothing to justify the result except the original capitalization approach.

It is unfortunate that this matter should have been nine years in the courts but it is equally unfortunate that a palpably wrong result should be condoned for that reason. Nor is it permissible to conclude that the city is at fault for the delay. There can. be little doubt that the sad history of this case merely points up the ineptitude of the present judicial system of determining value. Where an adversary system requires a determination within the confines of a record consisting of the testimony of so-called experts, each hired for the purpose of attesting to an exaggerated value — one enhanced, the other depressed — little better can be expected.

A careful analysis of the evidence does provide a clue to the real value of the parcel. There is nothing unduly speculative about taking the capitalized rental of an executed lease, the *bona fides* of which is not questioned, as a basis for fixing value (*City of Buffalo* v. *George Irish Paper Co.,* 26 N Y 2d 869). Nor do I find that the facts which induced this court on the first appeal to find the lease in question too speculative have survived more recent thinking on the subject. The failure of the new tenant to go ahead and of the claimant to exercise his option of cancellation could both have well been found to be the consequence of the anticipated taking on condemnation. Such a finding would be buttressed by the city's failure to approve the plans for the projected garage within the usual time limits.

That is not to say, however, that the projected capitalization testified to represents value. The fault lies in the rate. Here again the basic fault in the system appears. The city never conceded that capitalization was a permissible approach, so it offered no proof of a proper rate. It did, however, offer proof of facts from which a rate could be deduced. There was proof, uncontradicted except as indicated below, that this type of garage was first built about 1950. The salient features are an unwalled structure with cubicles just wide enough to contain a car. The cars cannot be moved under their own power because there is insufficient space for the operator to get in or out of the car, and there are no ramps. Cars are moved

by means of traveling elevators and they are taken on and off the elevator by a powered dolly. In the first 10 years of operation the mechanical problems in connection with this operation never were solved satisfactorily and operation never became feasible or profitable. As a result this type of operation, though theoretically desirable, has not prospered, and garages of the type, not proving profitable, have to a large extent been converted to more conventional operation or have been discontinued. The operation at Fulton Street was shown to have failed financially. The only counter to this testimony was the fact that the proposed lessee was an experienced garage operator who was willing to enter such a venture.

At the very best these facts show that the proposed use was a highly speculative venture and the rental was far from the category of an assured realizable income. It is fantastic to believe that an owner of property would be satisfied with a 7% return on a venture involving such a risk. The record is barren of proof as to what the return should be under these circumstances, but common experience shows that a return of 1% above the customary rate for a secured obligation is hardly realistic. To avoid an additional trial, it is submitted that if the claimant would stipulate to reduce the award to $200,000 (based on a capitalization rate of 12½%) an equitable award, and one in keeping with the other land values found in regard to other parcels in the taking, would result. Otherwise, an additional trial based on this guideline should be had.

McGIVERN, J. P., NUNEZ and TILZER, JJ., concur with McNALLY, J.; STEUER, J., dissents in an opinion.

Final decree, Supreme Court, New York County, entered on or about December 3, 1969, affirmed, without costs and without disbursements.